**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**
**IN AND FOR NEW CASTLE COUNTY**

| | | |
|---|---|---|
| PALISADES COLLECTION, LLC and CLIFFS PORTFOLIO ACQUISITION I, LLC, | ) ) ) | |
| | ) | |
| Plaintiffs/Counterclaim Defendants | ) ) | |
| | ) | |
| v. | ) | C.A. No.: N14C-08-036 EMD CCLD |
| | ) | |
| UNIFUND CCR PARTNERS, CREDIT CARD RECEIVABLES FUND, INC., ZB LIMITED PARTNERSHIP and UNIFUND INTREPID, LLC, VINTAGE RECEIVABLES, LLC AND UNIFUND PORTFOLIO A, LLC, | ) ) ) ) ) | Trial by Jury Demanded |
| | ) | |
| Defendants/Counterclaim Plaintiffs, | ) ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PALISADES COLLECTION, LLC and CLIFFS PORTFOLIO ACQUISITION I, LLC | ) ) | |
| | ) | |
| Plaintiffs/Counterclaim Defendants. | ) ) | |

Submitted: July 1, 2015
Decided: November 3, 2015

*Upon Consideration of the*
*Defendant and Counterclaim Plaintiffs' Motion for Judgment on the Pleadings*
***GRANTED*** *in part and **DENIED** in part*

Norman M. Monhait, Esquire, and Carmella P. Keener, Esquire, Rosenthal Monhait & Goddess, P.A., Wilmington, Delaware, and Steven I. Adler, Esquire, and Lauren X. Topelsohn, Esquire, Mandelbaum, Salsburg, Lazris & Discinxza, P.C., West Orange, New Jersey, *Attorneys for the Plaintiffs and Counterclaim Defendants Palisades Collection, LLC and Cliffs Portfolio Acquisition I, LLC.*

Mary F. Dugan, Esquire, Young Conaway Stargatt & Taylor, LLP, Wilmington, Delaware, and Alan H. Abes, Esquire, Dinsmore & Shohl LLP, Cincinnati, Ohio, *Attorneys for Defendants and Counterclaim Plaintiffs Unifund CCR Partners, Credit Card Receivables Fund, Inc., ZB Limited Partnership, Unifund Intrepid, LLC, Vintage Receivables, LLC and Unifund Portfolio A, LLC.*

**DAVIS, J.**

## INTRODUCTION

This is a civil action assigned to the Complex Commercial Litigation Division of the Court.  The action concerns a long-standing, continuous and ongoing relationship between Plaintiffs and Counterclaim Defendants Palisades Collection, LLC ("Palisades") and Cliffs Portfolio Acquisition I, LLC ("Cliffs" and, collectively, Palisades and Cliffs as the "Palisades Parties") and Defendants and Counterclaim Plaintiffs Unifund CCR Partners ("Unifund"), Credit Card Receivables Fund, Inc. ("CCR"), ZB Limited Partnership ("ZB") Unifund Intrepid, LLC ("Unifund Intrepid"), Vintage Receivables, LLC ("Vintage") and Unifund Portfolio A, LLC ("Port A" and, collectively, Unifund, CCR, ZB, Unifund Intrepid, Vintage and Portfolio as the "Unifund Parties").  From what the Court can tell at this point, the relationship seemed to be a positive one -- involving business concessions and ongoing adjustments -- that recently soured. The primary claims among the parties arise from a written master servicing agreement, under which the Palisades Parties purchased certain portfolios of uncollected consumer debt, and retained the Unifund Parties to service the portfolios for a base fee. The parties then shared the profits based on a number of factors including, but not limited to, the amount of collections realized from the portfolios.

On August 5, 2014, the Palisades Parties filed a Complaint against the Unifund Parties, asserting claims for breach of contract and unjust enrichment.  The Unifund Parties filed their Answer and Counterclaims for breach of contract, unjust enrichment and for declaratory relief on September 15, 2014.

The Palisades Parties then filed an amended complaint (the "Amended Complaint") on November 12, 2014.   The Amended Complaint named an additional defendant, dropped one

breach of contract claim and added two new claims – one claim for unjust enrichment and the other claim for breach of contract. Specifically, the Amended Complaint asserts the following causes of action: Count I ("Breach of Contract" against CCR and ZB); Count II ("Unjust Enrichment – Base Fee" against CCR and ZB); Count III ("Unjust Enrichment – 10% Premiums Paid" against Unifund, Portfolio, CCR and ZB); and Count IV ("Breach of Contract – as to Unifund and Port A" against Unifund and Portfolio). The Unifund Parties answered the Amended Complaint and filed amended counterclaims (the "Amended Answer") on December 15, 2014.

On the same day that the Unifund Parties filed the Amended Answer, the Unifund Parties moved under Rule 12(c) of the Rules of Civil Procedure for the Superior Court of the State of Delaware ("Civil Rule 12(c)") for judgment on the pleadings (the "Motion"). The Motion seeks dismissal of Count I in part and Counts II, III, and IV in full.

For the reasons set forth below, the Court will **GRANT** the Motion as to Court II and **DENY** the Motion as to all other Counts of the Amended Complaint.

### CONTENTIONS OF THE PARTIES

The Unifund Parties make a number of arguments for relief in support of the Motion. The Unifund Parties contend that applicable statutes of limitations bar all of the Palisades Parties' claims to the extent that Counts I, II, and III seek recovery of any amount that accrued more than three years from the filing of the Complaint. The Unifund Parties further contend that Count IV is barred in full as it is premised on payments made more than seven years before the Palisades Parties brought this action.

The Unifund Parties also claim that Count II, an unjust enrichment claim, is barred by an express contract governing the dispute. With respect to the other claim for unjust enrichment,

3

Count III, the Unifund Parties contend that this claim is barred by the volunteer payment doctrine and does not otherwise state a claim for recovery. Finally, the Unifund Parties argue that Count IV is barred for failing to plead a condition precedent – specifically that the Unifund Parties ever recovered the costs necessary under the applicable contract.

The Palisades Parties dispute each argument advanced by the Unifund Parties. First, the Palisades Parties contend that their claims are not time barred because the servicing agreements are continuous contracts which the Unifund Parties continue to breach. Next, Plaintiffs argue that the unjust enrichment claim should be sustained under a quasi-contract theory because the express contract is silent as to the remedies for nonpayment of the "Base Fee." As to Count III, the Palisades Parties claim that the voluntary payment doctrine does not apply and that the Palisades Parties received no consideration for the paid premiums. Finally, the Palisades Parties contend that as to Count IV, the Unifund Parties' recovery of the costs incurred in connection with the collection of the portfolios is more than sufficiently pled.

**RELEVANT FACTS**[1]

The Palisades Parties and the Unifund Parties had a long-standing, continuous and ongoing relationship. Pursuant to a Master Servicing Agreement, executed on May 28, 2003 (as amended and restated, the "MSA"), the Palisades Parties purchased certain portfolios of uncollected consumer debt, retained Unifund to service the portfolios for a Base Fee, and the parties shared the profits based on collections.

Under the MSA, Unifund and/or Unifund Intrepid were to pay the Palisades Parties an amount equal to one hundred percent (100%) of the purchase price paid by the Palisades Parties

---

[1] Unless otherwise indicated, the following are the Relevant Facts of this action as the facts were alleged in the Amended Complaint. When considering a motion under Civil Rule 12(c), the Court must assume the truthfulness of all well-pled allegations of fact in the complaint and draw all reasonable inferences in favor of the plaintiff. *See, e.g., McMillan v. Intercargo Corp.*, 768 A.2d 492, 500 (Del. Ch. 2000). The Court must, therefore, accord plaintiffs opposing a Rule 12(c) motion the same benefits as a plaintiff defending a motion under Civil Rule 12(b)(6). *Id.*

4

and their cost of funds for any single portfolio (the "Purchase Price Threshold Amount") within a designated number of months from the purchase date of that portfolio. Unifund and/or Unifund Intrepid paid this Purchase Price Threshold Amount through collecting on accounts contained in the particular portfolio. Unifund was paid through "Servicing Fee Premiums" in the form of portions of collections retained by Unifund and/or Unifund Intrepid. In the event that Unifund and/or Unifund Intrepid failed to collect enough to pay the Purchase Price Threshold Amount within the specified time, the Palisades Parties were entitled to fifty percent (50%) of the Servicing Fee Premium on *all* portfolios that would have otherwise been paid to Unifund and/or Unifund Intrepid.

The Palisades Parties contend that beginning on or about December 1, 2007 and continuing to date, Unifund and/or Unifund Intrepid have failed to collect and pay to the Palisades Parties the Purchase Price Threshold Amount for at least one portfolio at all times. The Palisades Parties allege that despite their demands, the Unifund Parties continue to retain and distribute to themselves the entire Service Fee Premium and have failed and refused to remit fifty percent (50%) of that fee to the Palisades Parties. The Palisades Parties claim that the amount of monies presently due and owing to them from Unifund and/or Unifund Intrepid exceeds $20 million.

Pursuant to the MSA, Unifund agreed to service certain portfolios of consumer receivables purchased by Palisades and owned by Palisades' wholly-owned subsidiaries including, but not limited to, Cliffs. In accordance with the MSA, each subsidiary of Palisades would own a separate portfolio and would be considered a client (a "Client") of Unifund.[2] On the date on which each portfolio was purchased, each Client was deemed to have retained

---

[2] Master Servicing Agreement ("MSA"), at Introduction.

Unifund as the "Servicer" for purposes of servicing the accounts receivables included in the portfolio.[3]

Section 2 of the MSA, subject to the amendments, stated that Unifund was generally required to:

- Take such action to maximize the recovery of receivables by each Client, including the selection and engagement of third-party collectors, attorneys or servicers at Servicer's expense or the sale, lease, assignment or liquidation of receivables;

- Settle and/or compromise any receivable and, if authorized by Palisades, bring collection actions;

- Maintain electronic data on the receivables including notes and documentation of all payments, credits, and any other servicing activities; and

- Cooperate with Palisades in connection with the review of the receivables and periodic audits by Palisades.[4]

As compensation for servicing the Portfolios, the parties agreed that Unifund would be entitled to receive a "Base Fee" and a "Servicing Fee Premium" in such amounts as set forth on the fee schedule attached as Schedule 1 to the MSA.[5] The Base Fee consisted of a fixed percentage of the "Gross Collections," as defined in the applicable schedule, of the receivables collected on behalf of each Client. The Servicing Fee Premium was a contingent amount based on a specified percentage of the applicable portfolio.

The MSA required that the proceeds of the receivables collected by Unifund were to be held in trust for the benefit of the Client.[6] Unifund was to distribute the proceeds on a weekly basis to Unifund and Palisades, as the agent for each Client.[7]

---

[3] *Id.* at ¶1.
[4] *Id.*, at §2.
[5] *Id.*, at §4.
[6] *Id.*, at §5(d).
[7] *Id.*

The MSA and payment schedules were amended several times over years. Ultimately, the MSA provided that, if by the end of the 27th month after the purchase date of a portfolio (the "Threshold Date"), the Client had not received the Purchase Price Threshold Amount of that Portfolio, then the "Client" would also be entitled to receive fifty percent (50%) of the Fee Premium to be distributed to the "Servicer" of all portfolios being collected until such time as the "Client" has received the Purchase Price Threshold Amount with respect to that particular Portfolio.[8] According to the Amended Complaint, this means that the "Client" is entitled to receive fifty percent (50%) of the Servicing Fee Premium that otherwise would have been distributed to Unifund for other (i.e., all outstanding) portfolios until the shortfall, with respect to a Purchase Price Threshold Amount, was made up ("Shortfall Premiums").

Additionally, Unifund specifically "waived its right to withhold, or set off against, any Proceeds for claims that the Servicer may have against Palisades or any Client."[9]

The Amended Complaint goes on to allege that, beginning on November 30, 2007 and continuing at all times thereafter, at least one of the Portfolios did not generate a return rate that resulted in the Palisades Parties receiving the Purchase Price Threshold Amount by the Threshold Date. As such, under the MSA, the Palisades Parties should have been entitled to Shortfall Premium payments by Unifund and/or Unifund Intrepid. The Palisades Parties allege that instead of making such payments, Unifund and/or Unifund Intrepid retained Shortfall Premium payments in violation of certain provisions of the MSA including Section 5(d) of the MSA.

The Amended Complaint then goes on to contend additional facts that support Count III and Count IV. According to the Amended Complaint, the Palisades Parties sold six debt

---

[8] *Id.*, Schedule 2 at ii.
[9] *Id.*, § 5(f).

portfolios to Unifund and Port A. The six portfolios were sold as follows: (i) two on September 30, 2005; (ii) two on December 3, 2005; (iii) one on December 23, 2005; and (iv) one on September 29, 2006 (each portfolio a "Sold Portfolio" and collectively, the "Sold Portfolios"). The Palisades Parties provided Unifund and Port A with the relevant underlying account documents as to the Sold Portfolios. The relevant underlying account documents included chains of title, bills of sale, account files and other related information (the "Media").

The Palisades Parties and Unifund and Port A purportedly agreed that the December 23, 2005 Sold Portfolio and the September 29, 2006 Sold Portfolio (collectively, the "Profit Share Portfolios") were more valuable than the other remaining Sold Portfolios. Here, the various parties agreed that, in addition to the purchase price to be paid to the Palisades Parties, Unifund and Port A would pay the Palisades Parties fifty percent (50%) of the profits realized after Port A had recovered its costs of collection (the "Profit Share Agreement"). The parties do not seem to have memorialized the Profit Share Agreement in writing.

Throughout, Unifund and Port A reviewed the accounts included in the Sold Portfolios and rejected a certain number of those accounts. Unifund and Port A rejected the Shared Portfolios' particular accounts because Unifund and Port A determined these accounts were uncollectable or potentially uncollectable. In total, Unifund and Port A rejected less than ten percent (10%) of the Sold Portfolios' accounts.

Thereafter, a dispute arose among the Palisades Parties, Unifund and Port A. Unifund and Port A contended that the Palisades Parties failed to provide all of the Media necessary to collect on the Sold Portfolios. As such, Unifund and Port A sought to return additional accounts from the Sold Portfolios. The Palisades Parties continued to provide Media and Port A and Unifund continued to ask for further documentation. The Amended Complaint then goes on --

8

for 16 numbered paragraphs -- to list the various communications with respect to disputed accounts and the attempts by the parties to resolve the issues.

The Amended Complaint claims that the Palisades Parties and Unifund and Port A never agreed on the return of any additional Sold Portfolios' accounts other than those initially rejected during the initial review by Port A and Unifund.

When the Unifund Parties filed the Amended Answer, the Unifund Parties contended that the Palisades Parties agreed to pay a ten percent (10%) premium, or "upcharge," on future portfolios purchased by the Palisades Parties from Unifund or Port A (the "Purchase Premium Agreement").[10]  Moreover, as part of the Purchase Premium Agreement, the Unifund Parties contend that the Palisades Parties actually paid a premium of $556,773 as part of a portfolio purchased in October of 2007, and $636,363 in November of 2007 (collectively, the "Paid Premiums").  The Palisades Parties claim that they never agreed to such a ten percent (10%) premium for the reasons set forth in the Amended Answer.  Moreover, the Palisades Parties allege that they never agreed to the return of any accounts from the Sold Portfolios that would have led to an agreement to pay a premium of future purchases of portfolios.

## LEGAL STANDARD

A party may move for judgment on the pleadings pursuant to Civil Rule 12(c).[11]  In determining a motion under Civil Rule 12(c) for judgment on the pleadings, the Court is required

---

[10] Like the Profit Sharing Agreement, the Court is not clear on whether the Purchase Premium Agreement was ever memorialized by a formal written agreement.

[11] Civil Rule 12(c) provides:

> *Motion for judgment on the pleadings.* -- After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the Court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Del. Super. Civ. R. 12(c).

to view the facts pleaded and the inferences to be drawn from such facts in a light most favorable to the non-moving party.[12] The Court must take the well-pleaded facts alleged in the complaint as admitted.[13] When considering a motion under Civil Rule 12(c), the Court also assumes the truthfulness of all well-pled allegations of fact in the complaint.[14] The Court must, therefore, accord plaintiffs opposing a Rule 12(c) motion the same benefits as a plaintiff defending a motion under Civil Rule 12(b)(6).[15] The Court may grant a motion for judgment on the pleadings only when no material issue of fact exists and the movant is entitled to judgment as a matter of law.[16]

## DISCUSSION

**A.    At this stage of the proceedings, the Court holds that too many contested issues of fact exist with respect to whether the statute of limitations has run on Counts I, II, III and IV.**

The Unifund Parties contend that the applicable three (3) year statute of limitations period[17] bars all of the Palisades Parties' claims to the extent that Count I, II, and III seek recovery of any amount that accrued as of fixed dates prior to the applicable limitations period. The Unifund Parties also claim that Count IV is barred in full as it is premised on payments made more than seven years before the Palisades Parties brought this action.

The Palisades Parties argue that the MSA and the Profit Share Agreement are continuing contracts. As continuing contracts, the Palisades Parties claim that the Unifund Parties' respective breaches are continuous, and, as such, the statute of limitations has not run.

---

[12] *See Desert Equities, Inc. v. Morgan Stanley Leveraged Equity Fund, II, L.P.*, 624 A.2d 1199, 1205 (Del. 1993); *see also Warner Commc'ns, Inc. v. Chris–Craft Indus., Inc.,* 583 A.2d 962, 965 (Del. Super.)*, aff'd without opinion,* 567 A.2d 419 (Del. 1989).
[13] *See Desert Equities, Inc.*, 624 A.2d at 1205; *Warner Commc'ns, Inc.*, 583 A.2d at 965.
[14] *See McMillan,* 768 A.2d at 500.
[15] *Id.*
[16] *See Desert Equities, Inc.*, 624 A.2d at 1205; *Warner Commc'ns, Inc.*, 583 A.2d at 965.
[17] 10 *Del. C.* §8106.

Delaware Courts have held that a cause of action for a breach of contract accrues at the time of the breach.[18] Whether a contract is continuous or severable impacts the accrual date.[19] If the Court finds a contract continuous in nature, Delaware's statute of limitations does not typically begin to run until the termination of the entire contract.[20] If the Court finds the contract severable in nature, the statute of limitations generally begins to run on each severable portion when a party breaches that portion of the contract.[21] The Court determines the continuous or severable nature of a contract by analyzing the intent of the parties.[22] The Court must ascertain this intent through the terms and subject matter of the contract, taken together with pertinent facts and circumstances surrounding the contract.[23]

In cases of continuous contract and continuing breach, the applicable statute of limitations begins to run only when full damages can be ascertained and recovered.[24]

The Unifund Parties argue that the Palisades Parties are substituting the parties' ongoing business relationship for a single continuous contract. The Unifund Parties claim that the MSA or the Profit Sharing Agreement is not a continuous contract because, as to discrete account portfolios, the MSA or the Profit Sharing Agreement sets forth obligations that can only be breached separately. The Palisades Parties counter by arguing that the Amended Complaint and Amended Answer set forth sufficient facts to support a conclusion, at least for purposes of Civil Rule 12(c), that the MSA and the Profit Sharing Agreement -- as applied to the various

---

[18] *Kaplan v. Jackson*, No. C.A. 90C-JN-6, 1994 WL 45429, at *2 (Del. Super. Ct. Jan. 20, 1994); *Nardo v. Guido DeAscanis & Sons,* 254 A.2d 254, 256 (Del. Super. Ct. 1969).
[19] *Kaplan* at *2.
[20] *Id*.
[21] *Id*.
[22] *Id*.; *Tracey v. Franklin,* 67 A.2d 56, 61 (Del. Supr. 1949).
[23] *Kaplan* at *2.
[24] *Matter of Burger*, 125 B.R. 894, 902 (Bankr. D. Del. 1991) (citing, *Oliver B. Cannon & Son, Inc. v. Fid. & Cas. Co. of N.Y.,* 484 F. Supp. 1375, 1390 (D. Del.1980) (action not barred by Delaware statute of limitations)).

Portfolios, Purchase Price Threshold Amount(s) and use of the Servicing Fee Premiums to satisfy the Purchase Price Threshold Amount(s) – constitutes continuous contracts.

In *Matter of Burger*,[25] the case involved a Services Agreement pursuant to which investors in a dairy herd agreed to finance the purchase of the herd, pay for its ongoing costs, and retained Burger to "manage, maintain and expand" the herd.[26] In exchange, "Burger was entitled to 50% of any annual cash revenues once the Investors had" received "a 15% annual return on their investment."[27] By 1989, Burger filed for bankruptcy, and the Investors filed a proof of claim seeking damages based on Burger's breach of the Services Agreement which Burger contended was time-barred by 10 Del. C. §8106. According to the Court,

> The initial and key question underlying Burger's statute of limitations defense is when did the statute of limitations begin to run for breach of the services contract. The general statute of limitations for contract actions is set forth in title 10, section 8106 of the Delaware Code which provides for a three-year limitation period . . . . Burger points to the Investors' allegations constituting breach of contract which occurred sometime between 1981–1983. The Investors contend that Burger's breach was ongoing in that he failed to expand the herd and committed other breaches of the Services Agreement which were continuous until the contract expired.[28]

The Court rejected Burger's statute of limitations defense.[29] In doing so, the Court acknowledged that under Delaware law, a cause of action for breach of contract accrues at the time of the breach.[30] However, the statute of limitations does not typically run against a continuing cause of action until the termination of the contract.[31] Therefore, in cases of

---

[25] *Id.* at 902.
[26] *Id*. at 898.
[27] *Id*.
[28] *Id*. at 901.
[29] *Id*. at 902.
[30] *Id*.
[31] *Id*.

continuous contract and continuing breach, the statute begins to run only when full damages can be ascertained and recovered.[32]

The question becomes can the Court rule, at this early stage of the proceedings, whether this situation involves a series of discrete contracts, or a continuous or series of continuous contracts. The Court does not believe the record has been sufficiently developed for a ruling on the statute of limitations issue at this time. In coming to this conclusion, the Court relies on the decision in *SPX Corp. v. Garda USA, Inc.*[33]

As set forth in *SPX Corp*, the moving party bears the burden of proving that a limitations period has lapsed and that claim is time-barred.[34] "When a complaint asserts a cause of action that on its face accrued outside the statute of limitations, however, the plaintiff has the burden of pleading facts leading to a reasonable inference that one of the tolling doctrines adopted by Delaware courts applies."[35] According to *SPX Corp.*, at this stage of the proceedings, this Court typically conducts a three-part analysis to determine whether a claim is time barred.[36] From the pleadings, the Court looks to determine: (i) the cause of action's accrual date based on the allegations; (ii) whether the plaintiff has plead facts sufficient to create a reasonable inference that the statute of limitations has been tolled; and (iii) "assuming a tolling exception has been pleaded adequately, when the plaintiff was on inquiry notice of a claim based on the allegations."[37]

Although the allegations set forth in the Amended Complaint superficially appear to have accrued outside the applicable statute of limitations without pleading a tolling exception, as

---

[32] *Id.*
[33] *SPX Corp. v. Garda USA, Inc.,* C.A. No. N10C-10-162 WCC, 2012 WL 6841398 (Del. Super. Dec. 6, 2012). Although *SPX Corp.* involves a Civil 12(b) situation, the reasoning is applicable in a Civil Rule 12(c) situation.
[34] Id. at *2.
[35] *Winner Acceptance Corp. v. Return on Capital Corp.*, No. 3088-VP, 2008 WL 5352063, at *14 (Del. Ch. Dec. 23, 2008).
[36] *SPX Corp.*, 2012 WL 6841398, at *2.
[37] *Id.* (quoting from Winner, 2008 WL 5352063, at *14).

13

in *SPX Corp.*, the Court's ability to apply the three-part analysis in this case is frustrated by the Palisades Parties' assertions that the MSA and the Profit Sharing Agreement are continuing contracts. As a result, the Court's inquiry is simply whether sufficient pleadings of the particular Unifund Parties' continuing obligations exist to support the Palisades Parties' assertion. In other words, the Amended Complaint can only be saved if the Court finds that the allegations set forth in the complaint are sufficient to support that the MSA and/or the Profit Sharing Agreement is a "continuing contract" and the applicable Unifund Parties' obligations are ongoing.

To determine whether a contract is continuous or severable, the Court analyzes the intent of the parties.[38] Specifically, "[t]he Court must ascertain this intent through the terms and subject matter of the contract, taken together with pertinent facts and circumstances surrounding the contract."[39] However, the *SPX Corp.* Court noted that the question of the parties' intent usually cannot be resolved on a motion to dismiss, as it is a factual issue that must be resolved by additional discovery and trial.[40] In *SPX Corp.*, this Court declined to decide the case on a motion to dismiss because it would have required the Court to make factual determinations concerning the parties' intent, taken together with the relevant circumstances surrounding the negotiations and execution of the contract, which was clearly inappropriate at that stage of the litigation and against the "mountain of caselaw."[41]

The Court finds the present litigation is in a similar litigation posture. While there appears to be no dispute as to certain dates of entry into the MSA, the sale of Portfolios or to certain payments (or non-payments) under the MSA or the Profit Sharing Agreement, the record (*as plead* in the Amended Complaint and the Amended Answer) sets forth a interconnected and

---

[38] *Id.,* at *3.
[39] *Id.* (quoting from *Kaplan v. Jackson*, No. 90C-JN-6, 1994 WL 45429, at *2 (Del. Super. Jan. 20, 1994).
[40] *Id.*
[41] *Id.*, at *3-4 (and cases cited therein).

14

continuous ongoing contractual arrangement between the Palisades Parties and the Unifund Parties. The payment arrangements do not appear to be controlled by the MSA and the particular Portfolio but also require reference to "all" the outstanding Portfolios when certain amounts – *i.e.*, the Purchase Price Threshold Amount – are not met. In those instances, the Servicing Fee Premiums from other outstanding Portfolios are to be used, in part, to make up shortfalls. As for the Profit Share Agreement, the allegations are of performance and continued performance.

As such, the Court is not in a position to find that there are no reasonably inferable facts under which the Palisades Parties would be unable to prevail. Further, the Court finds that a dismissal prior to additional discovery regarding the nature of the contract beyond the bare allegations of the complaint would be premature at this stage of the proceedings and contrary to decisional law that holds that disputes should be resolved on the merits and not on the technical allegations of a party.[42] This is not to say that certain aspects of the Amended Complaint's claims cannot be handled prior to a trial on the merits. Instead, the Court is holding that a more developed record – *e.g.*, one that identifies (i) which Purchase Price Threshold Amounts were satisfied as to a particular Portfolio or (ii) the intent of the parties – is necessary before the statute of limitations can be applied here. For these reasons, the Court will **deny** the Motion with respect to the statute of limitations arguments.

**B.      Count II fails to sets forth a viable claim for unjust enrichment and the Court will enter judgment in favor of the Unifund Parties.**

The Unifund Parties argue that Count II, for unjust enrichment arising out of alleged shortfall premiums, should be dismissed because all of the Amended Complaint's allegations arise directly out of the Servicing Agreements, which constitute an undisputed written contract. The Court agrees and will dismiss Count II under Civil Rule 12(c).

---

[42] *Id.*

"It is a well-settled principle of Delaware law that a party cannot recover under a theory of unjust enrichment if a contract governs the relationship between the contesting parties that gives rise to the unjust enrichment claim."[43] As a general rule, recovery under a quasi-contract theory is unavailable where an express contract governs the subject matter at issue.[22] However, a quasi-contract claim may proceed where an express contract exists, so long as the rights and obligations that are the subject of that claim are not governed exclusively by the contract at issue.[44]

The Palisades Parties contend that Unifund has wrongfully paid itself the Base Fee. The Palisades Parties also claim that the MSA is silent as to what the parties' rights, obligations and remedies are in the event that Unifund wrongfully pays itself the Base Fee. The Palisades Parties claim that this wrongful payment unjustly enriches Unifund and, without a contractual remedy under the MSA, the Palisades Parties are entitled to an unjust enrichment claim as set forth in Court II of the Amended Complaint. As the Court reads the various agreements, the Palisades Parties should have a valid contractual remedy for recovery if the Unifund Parties breached the Master Servicing Agreement concerning the Base Fee or any other "over-withholding" of compensation under the agreement.

The Palisades Parties incorrectly rely on *Avantix* to support their arguments. In *Avantix*, the plaintiffs argued their unjust enrichment claims as an alternative to the contract claims, not as a claim that could be sustained parallel to a breach of contract claim.[45] In this case, the Palisades Parties seek to pursue *both* a breach of contract claim and an unjust enrichment claim as to the MSA. The Amended Complaint does not plead Count II in the alternative.

---

[43] *Vichi v. Koninklijke Philips Elecs. N.V.*, 62 A.3d 26, 58-59 (Del. Ch. 2012).
[44] *Avantix Labs., Inc. v. Pharmion, LLC*, No. C.A. No. N10C-01-010, 2012 WL 2309981, at *9 (Del. Super. June 18, 2012).
[45] *Id.*

16

In *Avantix* the unjust enrichment claims were based on work performed by the defendants for which the defendants did not receive written approval. As such, there was no clear contract provision governing the claims for those amounts, and the court allowed plaintiffs to pursue the claims under unjust enrichment. In this case, the Base Fee and Shortfall Premium Payments underlying Count II are defined terms under the MSA. Accordingly, the MSA governs any dispute arising out of any failure to make any Shortfall Premium Payment or "over-withholding" any Base Fee, and a claim for these amounts can only be based on the contracts between the parties.

The Court finds that Count II is not an alternative, independent theory of recovery. Moreover, the Court finds no independent basis for an unjust enrichment claim arising out of the Base Fee or the Shortfall Premium Payment. The Palisades Parties should be able to be made whole through a breach of contract claim *if* the Palisades Parties can factually demonstrate a breach of the MSA, or other related agreement and the claim is not barred by the applicable statute of limitations. Accordingly, the Court will **grant** judgment in favor of the Unifund Parties on Count II.

C.      **Count III sets forth, at this stage of the proceedings, a valid, separate claim for unjust enrichment.**

In their Counterclaim to the Complaint, Unifund and Port A alleged that the Palisades Parties had previously agreed to repay, through the Purchase Premium Agreement, Unifund and Port A approximately $4 million for certain accounts included in the Sold Portfolios. Unifund and Port A further alleged that the Palisades Parties had agreed to pay such amount by paying a ten percent (10%) premium or "upcharge" on future portfolios purchased by the Palisades Parties from Unifund or Port A, and that the Palisades Parties had paid an upcharge of $556,773 as part

17

of a portfolio purchased in late October 2007 and an upcharge of $636,363 in late November 2007 for a total of $1,193,136.

In response, in the Amended Complaint, the Palisades Parties asserted a cause of action for unjust enrichment and sought the return of the ten percent (10%) premiums paid. In the Amended Complaint, the Palisades Parties allege that they never agreed to accept the return of any of the accounts included in the Sold Portfolios, other than those rejected during the review period at about the time of the closing of each Sold Portfolio. In addition, the Palisades Parties state that they never changed the designation on any of these accounts in their records to reflect that such accounts were "unsold."

The Palisades Parties contend that they undertook no collection efforts with regard to those accounts and the accounts remain designated as "sold" in the Palisades Parties' books and records. The Palisades Parties state that to the extent Unifund or Port A added a ten percent (10%) premium to the purchases made by the Palisades Parties in October 2007 and November 2007, there was no consideration for such premium paid. Through Court III then, the Palisades Parties seek the return of the Paid Premiums made to the Unifund Parties purportedly without the consent or agreement of the Palisades Parties.

In the Motion, the Unifund Parties contend that Count III is barred by the voluntary payment doctrine, and because the facts alleged by the Palisades Parties do not constitute unjust enrichment as a matter of law. A "payment voluntarily made with full knowledge of the facts cannot be recovered, in the absence of a contract to repay."[46] The Unifund Parties contend that as the Palisades Parties never alleged a contract to repay they cannot recover these payments.

Unjust enrichment requires "the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity

---

[46] *Western Natural Gas Co. v. Cities Service Gas Co.*, 57 Del. 436, 445 (Del. 1964).

18

and good conscience.[47]  A defendant's simple receipt of money, goods or services is not the same as "the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity.[48]

In response to the Motion, the Palisades Parties now contend that they paid the Paid Premiums to Unifund, but received nothing in return.  The Palisades Parties argue that they made the Paid Premiums based on the Unifund Parties' claims that the Sold Portfolios were "impaired" because those portfolios included accounts receivable that were close to the statutes of limitations or already too old to sue on, and that the Palisades Parties had not provided sufficient documentation to enable the Unifund Parties to file suit against the debtors.  However, despite the Paid Premiums, the Unifund Parties never returned the allegedly "impaired" accounts to the Palisades Parties.  As such, the Palisades Parties contend that it would be against the fundamental principles of justice or equity and good conscience to allow the Unifund Parties to retain the Paid Premiums since the Palisades Parties allegedly received no consideration for the Paid Premiums.

Based solely on the papers, it appears unclear whether the parties agreed or even contracted for a ten percent (10%) upcharge on either the terms alleged in the Amended Complaint or the Amended Answer.  Moreover, the Court cannot determine whether there was any meeting of the minds on when a premium, like the Paid Premiums, would apply and be paid.  When the record is not properly developed or there is this type of lack of clarity, the Court will not grant judgment on the pleadings.

The Court admits that the Palisades Parties seem to have developed Count III recently, and only after the Amended Answer asserted a cause of action under the Purchase Premium

[47] *Vichi*, 62 A.3d at 58.
[48] *Nemec v. Shrader*, 991 A.2d 1120, 1130 (Del. 2009).

19

Agreement, claiming that the Palisades Parties made the Premium Payments on terms other than those suggested in the Amended Answer. This does not seem overly plausible. But, at this stage of the proceedings, where well-pled factual allegations are admitted as true, the Court is not in a position to find that there are no reasonably inferable facts under which the Palisades Parties would be unable to prevail on Count III – whether (i) as a viable stand alone quasi-contract claim exists, or (ii) the voluntary payment doctrine would apply to preclude the unjust enrichment claim. The Court will, therefore, **deny** judgment in favor of the Unifund Parties on Count III.

**D.      The Court can reasonably infer, from the allegations made in the Amended Complaint, that the Palisades Parties have plead the necessary conditions precedent for breach of contract with respect to Count IV.**

The Unifund Parties contend that Count IV is barred for failure to plead a condition precedent, specifically that Port A ever recovered its costs. The Palisades Parties counter by claiming that the Unifund Parties' recovery of the costs incurred in connection with the collection of the portfolios is more than sufficiently pled.

The Palisades Parties stated in the Amended Complaint that "[t]o date, neither Unifund nor Port A have paid to [the Palisades Parties] any part of the fifty percent (50%) profit share to which they are entitled after Port A had recovered its costs." [49] The Palisades Parties also allege that "Defendants have and continue to collect substantial monies with respect to" the Profit Share Portfolios. [50]

The Palisades Parties contend that the fact that the Unifund Parties have recovered their costs is implied in the Amended Complaint. In the alternative, the Palisades Parties have requested that the Court permit them to replead Count IV, pursuant to Superior Court Rule 15(a),

---

[49] Am. Compl. at ¶114.
[50] *Id.* at ¶¶115.

if the allegations in the Amended Complaint are insufficient to satisfy the condition precedent of the Unifund Parties' cost recovery.

Civil Rule 12(c) entitles the non-moving party to the benefit of any inference that can be fairly drawn from its pleading. The Court can make a fair inference from the Amended Complaint that the claim is that Port A has recovered its costs and that the Palisades Parties are now entitled to the profit share agreed upon under the Profit Share Agreement. The Court additionally believes that the Unifund Parties are on fair notice of the cause of action asserted in Court IV and the basis for that cause of action – the purported Profit Share Agreement and the breach of same. If in discovery the Unifund Parties develop a record that Port A did not recover its costs, then the Unified Parties will be entitled to judgment on Count IV. The Court will **deny** the Motion as to Court IV and whether the breach of contract is well plead, and it is not necessary for the Palisades Parties to replead.

## CONCLUSION

For the foregoing reasons the Motion is **GRANTED** as to Court II and **DENIED** on all other Counts of the Amended Complaint.

**IT IS SO ORDERED.**

/s/ *Eric M. Davis*
Eric M. Davis, Judge

21